IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RONALD LYNN WADSWORTH,        ) | |
|     Plaintiff,        ) | |
|   ) | |
| v.        ) | Civil No. 3:10-CV-00220-O (BF) |
|   ) | ECF |
| JOHN HOCK and MATTHEW        ) | |
| MORISAK,        ) | |
|     Defendants.        ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case was referred to the United States Magistrate Judge for pretrial management, including the disposition of non-dispositive motions and findings, conclusions, and recommendations on dispositive motions. Before the Court for Findings, Conclusions, and Recommendation is the Motion for Summary Judgment of Defendants John Hock and Matthew Morisak.

**Background**

Ronald Lynn Wadsworth ("Plaintiff"), currently incarcerated in the Michael Unit of the Texas Department of Criminal Justice Institutional Division in Tennessee Colony, Texas, is proceeding pro se and *in forma pauperis*. Defendants John Hock ("Hock") and Matthew Morisak ("Morisak") (collectively, "Defendants") are Police Officers for the City of Irving, Texas. Plaintiff filed this civil rights action against Defendants on February 4, 2010. This court stayed discovery except with respect to the issue of qualified immunity until dispositive motions with respect to Defendants' entitlement to qualified immunity could be decided.

Defendants filed their motion for summary judgment on October 3, 2011, asserting that they had probable cause to detain and arrest Plaintiff, that the arrest was lawful, that they did not use

excessive force during the arrest, and that Plaintiff suffered no more than *de minimis* injuries. Plaintiff responded to the summary judgment motion with a sworn statement of facts.

## Statement of Undisputed Material Facts

The following facts are undisputed. Morisak, a police officer for the City of Irving, Texas, responded to a neighbor's call of suspicious circumstances at a house the neighbor believed to be unoccupied. Hock, also an Irving police officer, arrived on the scene to assist Morisak. After a confrontation with Plaintiff, they arrested him and took him to the Irving jail. Plaintiff did not tell Defendants he had been injured or request medical assistance. Irving Fire Department paramedics treated Plaintiff at the jail shortly after his arrival there. Defendants did not deny, or attempt to deny, medical care to Plaintiff.

Plaintiff pleaded not guilty to the misdemeanor of evading arrest or detention. After a bench trial, a state court judge convicted Plaintiff of the misdemeanor of evading arrest or detention and sentenced Plaintiff to sixty days in jail. Plaintiff was released for time served.

## Statement of Disputed Material Facts

The parties' sworn statements of the facts differ significantly from the beginning to the end of the events that happened on June 16, 2009.

According to Defendants' sworn statements, the following occurred:

> Morisak responded to a suspicious circumstance call where the reporting party was a neighbor who informed police that two suspicious individuals had entered a vacant home. Shortly after he arrived at the home, Morisak encountered one of the individuals who – when questioned regarding his presence at the residence – issued untruthful and evasive answers before ultimately admitting that his cohort (subsequently identified as Plaintiff) was in the home. Morisak announced himself as Irving PD and instructed the suspect in the home to come out of the house with his

hands up.[1] When the suspect inside the home refused to comply, Morisak believed that there was a possible burglary in progress and entered the home to search for the suspect. When the suspect fled the home, Morisak immediately exited the home to give chase. Morisak caught up to the fleeing suspect in a neighboring yard and they went to the ground. Morisak was able to control the suspect's right hand, but the suspect refused to give up his other hand. (Defs.' App. 4-6, 15-22, 49-51).

Around this time, Hock arrived at the scene to see Morisak attempting to handcuff a suspect that was actively resisting. Based on what he observed, Hock believed that he needed to assist Morisak. As such, Hock kneeled on the suspect's back in an attempt to help get him under control. However, the suspect continued to actively resist the attempts to subdue him, so Morisak was forced to use the Taser on the suspect. The suspect thereafter complied and was handcuffed. The suspect was then transported to the Irving City Jail, where he was treated by Irving Fire Department Medics within 10 minutes of [reaching the jail]. (Defs.' App. 31-32, 41-42, 175-176).

The following facts, taken most favorably to Plaintiff and accepted as true, are taken from Plaintiff's verified pleadings:

Plaintiff contends he was legally in the residence when he heard loud yelling from the back of the house, including threats of deadly harm from an unknown individual. Plaintiff claims that because he was in fear for his own safety, he left the house by a side door and entered the neighboring backyard to assess the situation and call for assistance by dialing 911. Morisak, believing Plaintiff was evading arrest and fleeing the scene of a possible burglary, found Plaintiff. At gun point, he ordered Plaintiff to surrender. Plaintiff contends he complied with the order by getting on his knees and offering his open, raised hands. He claims that Morisak, and then Hock, tackled, kicked, kneed and shot him three times with a Taser as he tried to get his left arm out from under him while he was pinned down by Defendants.

---

[1] It is important to note that – prior to being taken into custody– Plaintiff never identified himself as an occupant of the house. (Defs.' App. 161-162). Rather, Plaintiff attempted to flee from the officers.

More specifically, Plaintiff claims that despite his surrender stance and his telling Morisak that he had health problems, Morisak kicked him in the lower back-- right at his tailbone-- and continued to kick him. Plaintiff contends that after Hock joined in, Hock jammed his knee into Plaintiff's back and side, and slammed Plaintiff's head into the sidewalk. Additionally, he swears Morisak shot him in the lower back three times with a taser weapon because Plaintiff had been unable to free his left hand.

Plaintiff contends he was treated by Irving Firefighters who removed two tasers from his back. He claims he was not aware of the extent of injuries Defendants caused him until he received additional and more extensive medical treatment at Parkland Hospital. He claims he suffered damage to his right orbital bones (eye socket), damage to his tailbone, and a back injury that will require surgery at a later date.

### Standard of Review on Summary Judgment

Summary judgment is appropriate when the pleadings and the evidence show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986); *Melton v. Teachers Ins. & Annuity Assoc. of Am.*, 114 F.3d 557, 559 (5th Cir. 1997). The applicable substantive law identifies those facts that are material, and only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). There is a genuine issue of fact if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Society of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners, Inc.,* 41 F.3d 223, 226 (5th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 712 (5th Cir. 1994). Where the nonmoving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing an absence of evidence in support of the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once a properly supported motion for summary judgment is presented, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Elliott v. Lynn*, 38 F.3d 188, 190 (5th Cir. 1994) (citing *Anderson*, 447 U.S. at 249). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Since Plaintiff in this case is proceeding *pro se*, the Court must construe the allegations in the complaint liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam); *Sec. & Exch. Comm'n v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam). In this case, Plaintiff has filed evidentiary materials under oath in response to the summary judgment motion. However, the Court may consider all of Plaintiff's pleadings. The terms of 28 U.S.C. § 1746 govern verification of an unsworn complaint. A plaintiff may declare under penalty of perjury that the factual allegations contained in the pleading are true and correct. *See* 28 U.S.C § 1746. The factual allegations of the verified complaint are endowed with the evidentiary force of an affidavit. *Id.* Plaintiff's answers to the United States Magistrate Judge's questionnaire are likewise endowed with the evidentiary force of an affidavit because they are verified under penalty of perjury. *See* 28 U.S.C. § 1746. When a *pro se* plaintiff properly executes a complaint or other pleadings which call for a declaration in

5

conformity with 28 U.S.C § 1746, the plaintiff's statements are transformed from mere allegations of a pleading into specific facts as if they were in an evidentiary affidavit. *Searcy v. Cooper*, 2002 WL 535058 (N.D. Tex. Apr. 9, 2002), (citing *McNeal v. Macht*, 763 F. Supp. 1458, 1461 (E.D. Wis. 1991)) (citing *Murrell v. Bennett*, 615 F.2d 306, 310 & n. 5 (5th Cir. 1980)). In this case, the Court will exercise its discretion to consider Plaintiff's pleadings as competent summary judgment proof. *See Bookman v. Shubzda*, 945 F. Supp. 999, 1003 (N.D. Tex. 1996) (Fitzwater, J.); *Skotak v. Tenneco Resins, Inc.*, 953 F. 2d 909, 915 n. 7 (5th Cir. 1992). Additionally, the Court takes into consideration the fact that discovery has, at least in part, been stayed in this case. *See Borroto v. Wilson*, 2002 WL 24260, *2 (N.D. Tex. Jan. 7, 2002) (noting the Fifth Circuit's reversal and remand of a no-evidence summary judgment in favor of a defendant where discovery had been stayed).

## **Qualified Immunity**

Defendants contend they are entitled to summary judgment based upon the defense of qualified immunity. A government employee may assert the affirmative defense of qualified immunity to a suit for a civil rights violation under § 1983. *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992). Qualified immunity protects government officials performing discretionary functions from suit and liability for civil damages--to the extent their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). Immunity questions should be resolved at the earliest possible stage in the litigation because qualified immunity extends to immunity from suit, not merely immunity from liability. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

A court considering whether a defendant is entitled to qualified immunity conducts a two-prong inquiry. One prong entails a court's consideration of whether the facts alleged, taken in the light most favorable to the plaintiff, show a violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part by Pearson v. Callahan,* 555 U.S. 223, 236, 129 S. Ct. 808, 818 (2009). The other prong requires a court to determine within the specific context of the case whether the violated constitutional right was clearly established at the time in question. *Id.* at 201. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. The court has discretion to decide which of the two prongs to address first based upon the circumstances of the case. *Pearson*, 555 U.S. at 236; *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009). If the court answers both the constitutional violation and the clearly established question in the affirmative, the officer is not entitled to qualified immunity. *Lytle*, 560 F.3d at 410. Current law applies to the constitutional violation, but the law at the time of the incident applies to the clearly established prong; therefore, two different tests may be applicable in a given case. *See Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008).

The burden is on the plaintiff to disprove a defendant's qualified immunity defense. *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009); *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

## Analysis

In this case, the Court will consider first the question of whether a constitutional violation occurred. The threshold inquiry is as follows: "[t]aken in the light most favorable to the party

asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201 (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)).

Excessive force may violate the Fourth Amendment to the United States Constitution if a plaintiff proves: (1) an injury; (2) which resulted directly and only from the use of force that was clearly excessive to the need; and (3) the force used was objectively unreasonable. *Spann v. Rainey*, 987 F.2d 1110, 1115 (5th Cir. 1993); *see also Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998). Under Plaintiff's version of the facts, he suffered injuries which directly resulted from the use of force that was clearly excessive to the need. The question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Graham v. Conner*, 490 U.S. 386, 396 (1989).

Here, Plaintiff alleges that Defendants used excessive force during an arrest, and that he suffered injuries as a result. Defendants contradict Plaintiff's claim of unnecessary force, the amount of force used, when it was used, and why it was used, contending they believed they were subduing a burglar who might be concealing a weapon. They contend that Morisak and Plaintiff fell to the ground because the Morisak lost his balance, and that they made multiple requests for Plaintiff to give up his left hand. Defendants contend Plaintiff refused to comply and said, "Get off me." The officers claim they made continuous commands to "quit resisting" and had to deploy the Taser once, not three times as Plaintiff claims, to gain control of Plaintiff. Morisak believed that the Taser was necessary to take Plaintiff into custody and was reasonable under the circumstances. Both Morisak and Hock deny that they ever hit, kicked, or struck Plaintiff or ever saw another officer do so. The officers claim that neither of them was aware of any significant injury to Plaintiff. They saw only some minor scrapes to Plaintiff's face and some bruising on his wrists.

Defendants claim that their sworn statements about the surrounding circumstances and facts, together with Plaintiff's conviction on a plea of "not guilty" for the misdemeanor offense of Evading Arrest or Detention, proves their use of force was not excessive and was objectively reasonable as a matter of law. Under *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994), a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that "violation arose from the same facts attendant to the charge for which he was convicted, unless he proves 'that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" Although the *Heck* principle applies to § 1983 excessive force claims, the determination of whether such claims are barred is analytical and fact-intensive, requiring courts to focus on whether success on the excessive force claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction. *Ballard v. Burton*, 444 F.3d 391, 396 (5th Cir. 2006). *See Wells v. Bonner*, 45 F.3d 90, 95 (1995) (assuming that a successful excessive force claim would not imply the invalidity of a conviction for resisting a search).

The state court judge made the following findings:

> For all the reasons [the prosecutor] has stated, I do find that the officers were engaged in an attempt to lawfully stop whatever activity was going on in the house. It appears that the officers announced themselves in a tone of voice to be heard and that the defendant fled from that scene trying to get out of there, so I find the defendant guilty of the offense of evading arrest.

(Defs.' App. 34). In this case, a judgment in Plaintiff's favor on a claim of excessive force would not necessarily be inconsistent with his misdemeanor conviction of Evading Arrest or Detention. According to Defendants' excerpts from the transcript of the bench trial (Defs.' App. 1-37), it is

9

undisputed that Plaintiff left the house when he heard Morisak in the back yard and that Morisak had to locate him in a neighbor's backyard. Morisak gained control of Plaintiff's right hand and his left hand was under him after Morisak and Plaintiff fell. When Plaintiff did not produce his left hand, Morisak tasered him (once according to Morisak and three times according to Plaintiff). Plaintiff was arrested for a burglary in progress and evading arrest, but he was only indicted for the misdemeanor of evading arrest or detention.

The issue of whether Morisak and Hock used force excessive to the need both before and after Plaintiff was handcuffed was not tried and was not necessary to Plaintiff's state court conviction for evading arrest. The objective reasonableness of Defendants' conduct in this case hinges on facts that remain in dispute. Plaintiff contends the officers did not give chase but found him four or five minutes later in a neighbor's backyard trying to call 911 on his cell phone. He claims he immediately assumed some international surrender position. Defendants contend that they chased Plaintiff and apprehended him, believing they had interrupted a burglary in progress. They claim that Plaintiff refused to show his left hand which could have contained a weapon and never indicated his arm was pinned down. They claim that they reasonably believed that Plaintiff posed a serious threat of harm that called for a shot from the Taser. Taking Plaintiff's verified pleadings as true and viewing them in the light most favorable to the non-moving party (Plaintiff), the Court finds they raise fact questions as to whether the degree of force applied in effecting the arrest was objectively reasonable. Thus, a factual dispute over the material issue of the objective reasonableness of Defendants' actions exists, which, until resolved, leaves the issue of qualified immunity for later resolution.

Defendants contend that Plaintiff suffered only *de minimis* injuries. A prisoner's civil rights action requires an injury that is more than *de minimis,* but need not be significant. *See e.g., Siglar*

10

*v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). Plaintiff swears that most of his injuries were not immediately apparent and that he will support his claim of injuries with medical records. The Court accepts as true, for purposes of summary judgment, Plaintiff's sworn statement of the extent of his injuries. The Court also takes as true Plaintiff's sworn testimony that he received three Taser shots and medics removed two Taser darts from his back during treatment. Thus, Defendants' claim that Plaintiff's injuries are *de minimis* is also controverted.

Genuine issues of material fact exist with respect to the facts leading to Plaintiff's arrest, the confrontation between Plaintiff and Defendants, the amount of force necessary to subdue and control Plaintiff, the amount of force used by the officers, and the objective reasonableness of the force. The existence of genuine issues of material fact preclude the Court from granting Defendants' motion for summary judgment based upon the defense of qualified immunity.

## Unlawful Entry Without a Warrant

Morisak, the only officer who entered the house at 3723 Drake Street, Irving, Texas, seeks summary judgment on Plaintiff's claim for Unlawful Entry Without a Warrant based upon his defense of qualified immunity. Plaintiff swears that the house belonged to his wife, that he lived there with her and paid the property taxes, that the sewage system needed repairs that had not yet been made, that he was staying at his father's apartment but had returned to the house and was in the house legally to move his personal property and feed the cats. He claims Morisak did not have a warrant to enter the house or exigent circumstances that would justify his entry into the home.

At approximately 7:30 P.M. on June 16, 2009, Morisak received a call from dispatch regarding a suspicious circumstance at the residence at 3723 Drake Street. A neighbor advised there was a vehicle driving around the area multiple times that had pulled into the driveway of a vacant

house. (Defs.' App. 14–15, 29-31, 41, 49). Morisak waited for backup, and after another officer, Zimmerman, arrived, dispatch advised that two males had exited the vehicle in the driveway and had gone into the backyard of the residence. The officers went to check the back of the house and saw that the sliding glass door was open. (Defs.' App. 17, 49-50). A man (later identified as Perkins) came out of the back door and the officers ordered Perkins to the ground at gunpoint. When questioned regarding his presence at the residence – Perkins gave untruthful and evasive answers before ultimately admitting that someone else (subsequently identified as Plaintiff) was still in the house. While Zimmerman detained Perkins, Morisak went to the back sliding door, announced himself as Irving PD, and instructed the suspect to come out of the house with his hands up. When the suspect inside the house did not comply, Morisak believed that there was a possible burglary in progress and entered the home to search for the suspect and possible weapons. (Defs.' App. 18-20, 50).

Morisak heard noises in the house and again told the individual to show himself. He did not know where the individual was until he heard Zimmerman announce that there was a male running from the north side of the house. Morisak immediately moved furniture that had been stacked to block the front door and left the house in search of the suspect. (Defs.' App. 21-22, 51).

Plaintiff has not disputed these facts but urges that Morisak did not have probable cause to enter the house without a warrant and that exigent circumstances did not exist which would have warranted Morisak's entry into the house.

The Court will begin the qualified immunity analysis by determining whether Morisak violated one of Plaintiff's constitutional rights by entering the house without a warrant. Probable cause exists when under the "totality of the circumstances . . . there is a fair probability that

12

contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). The Court finds that when Morisak decided to enter the house, he had pieces of information which, taken together, amounted to a "fair probability" a suspect was inside burglarizing the house. *See id.* One neighbor had told Morisak that the woman whose daughter lived in the house had "kicked the daughter and her husband out" and had asked the neighbor to watch the purportedly vacant house. Morisak knew that neighbors had seen what they described as suspicious persons and that, on this particular evening, a car the neighbor did not recognize had driven around the neighborhood several times and had been parked in the driveway of the house about 7:30 P.M. Morisak determined that the front door of the house could not be opened because something had been stacked against it from the inside to prevent entry through the front door. Morisak knew that blocking doors was a common practice among drug users who did not want to be surprised while they were using drugs in vacant houses.

Additionally, the officers knew that two men had exited the car in the driveway and entered the backyard and that the patio door was standing open. A man came through the open patio door into the backyard and gave the officers inconsistent answers when they questioned him. The man finally admitted that someone he came with (later identified as Plaintiff) was in the house. The officers heard noises from the house, but received no verbal response when they announced themselves and told whoever was in the house to come out. These facts show that a reasonable officer in Morisak's circumstances would have believed that he had probable cause to enter the house.

Next, Plaintiff contends that no exigent circumstances justified the officers entering his house. The burden is on the government to prove the existence of the exigency. *United States v. Thompson,*

13

700 F.2d 944, 946 (5th Cir.1983). "Because it is essentially a factual determination, there is no set formula for determining when exigent circumstances may justify a warrantless entry." *United States v. Blount,* 123 F.3d 831, 837 (5th Cir.1997). The Fifth Circuit has held the possibility that evidence will be removed or destroyed, the pursuit of a suspect, and immediate safety risks to officers and others are exigent circumstances that may excuse an otherwise unconstitutional intrusion into a residence. *United States v. Mendoza–Burciaga,* 981 F.2d 192, 196 (5th Cir.1992).

This case involves officer safety. Exigent circumstances existed if the officer's fear for his own and other officers' safety was reasonable. *See United States v. Howard,* 106 F.3d 70, 76 (5th Cir.1997) (*citing United States v. Rodea,* 102 F.3d 1401 (5th Cir.1996)) ("[W]e will not second-guess the judgment of law enforcement officers when reasonable minds may differ."). This Court finds that at the moment Morisak decided to enter the house, there was reasonable danger to his safety and that of Zimmerman. Here the agents were first confronted with an individual coming out of the open patio door and giving inconsistent explanations for why he had been in the house. Then, when the man told the officers that another man was in the house, they called out but the person in the house failed to respond to their verbal announcements. Because the officers already suspected that a burglary was in progress in the house and knew that burglars usually protected themselves with weapons, they were reasonable to correlate violence and weaponry with burglary. At that time, the officers were reasonable to believe that someone was hiding in the house, potentially with weapons, and possibly watching the officers. Anticipation of a violent confrontation was reasonable.

These events alone would lead a reasonable police officer to anticipate danger, even though the officer did not see any weapons before he entered the house. *See, e.g., Howard,* 106 F.3d at 76 (finding exigent circumstances based on officer safety concerns when there were no visible weapons

14

but the officers suspected there was a burglary in progress.)  A reasonable officer in Morisak's circumstances would conclude that exigent circumstances justified an entry into the house. *See United States v. Newman*, 472 F.3d 233, 237 -238 (5th Cir. 2006).  The Court finds no constitutional violation occurred in light of the fact that Morisak's brief entry into the house was based upon probable cause and exigent circumstances.  Morisak is entitled to qualified immunity from suit on Plaintiff's claim of unlawful entry, and summary judgment should be granted in favor of Morisak on this claim.

### Deprivation of Medical Care

Plaintiff admitted in his deposition that Morisak and Hock did not deny him medical care and that he was treated by Fire Department paramedics within ten minutes after he reached the jail. (Defs.' App. 172.).  Accordingly, Morisak and Hock are entitled to summary judgment on Plaintiff's claim that they violated his constitutional rights by denying him medical care.

### CONCLUSION

Defendants' Motion for Summary Judgment on Plaintiff's excessive force claims should be denied at this stage of the proceedings.  This is not a recommendation that Defendants will not be entitled to qualified immunity as a matter of law in this case.  Rather, due to disputed issues of material fact in the record, Plaintiff has shown that Defendants are not entitled to immunity from suit at this stage of the proceeding.  Defendants are entitled to summary judgment on Plaintiff's claims that his constitutional rights were violated by Morisak's unlawful entry into Plaintiff's house and by Defendants' denial of medical care.

### RECOMMENDATION

The Court recommends that the District Court grant in part and deny in part Defendants' Motion for Summary Judgment.  Genuine issues of material fact preclude summary judgment on Plaintiff's claim under 41 U.S.C. § 1983 that Defendants violated his civil rights by applying excessive force during his arrest.  Defendants are entitled to summary judgment on Plaintiff's claims that Defendants violated his constitutional rights by unlawful entry into his house and by denial of medical care. The Court further recommends that the District Court permit discovery.  Additionally, this case should be returned to the District Court.

**SO RECOMMENDED**, January 6, 2012.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these Findings, Conclusions, and Recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed conclusions and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).